JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR E. FELIX,<br><br>    Plaintiff,<br><br> v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Defendant. | CASE NO. CV 14-3971-R<br><br>ORDER AFFIRMING DENIAL OF BENEFITS AND GRANTING JUDGMENT IN FAVOR OF DEFENDANT |

  Victor E. Felix ("Felix" or "Plaintiff") brought this action for benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against Metropolitan Life Insurance Company ("MetLife" or "Defendant"). The Court held a trial on January 20, 2015. Having reviewed the administrative record, other evidence properly before the Court, and the parties' arguments, and based on the Court's findings of fact, for the reasons set forth in this Order, the Court grants judgment in favor of Defendant.

  **I. FINDINGS OF FACT**

  Plaintiff is a former Senior Program Manager with ITT Corporation ("ITT"). The instant dispute arises out of MetLife's denial of Plaintiff's claim for long-term disability benefits under

the ITT Industries Long Term Disability Plan for Salaried Employees (the "Plan"). The Plan is governed by ERISA. ITT is the Plan sponsor, and MetLife is the long-term disability benefits claim administrator. Under the terms of the Plan, Plaintiff is entitled to long-term disability benefits if he meets the following disability definition:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 12 month period, you are unable to perform your Own Occupation for any employer in the Local Economy; or
>
> 2. after the first 12 month period, you are unable to work at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

(A.R. 879). Plaintiff claims he is entitled to long-term disabilities benefits because he suffers from depression and hypoglycemia, and is therefore unable to perform the duties of his occupation.

Plaintiff last worked for ITT on September 21, 2012. His job title at the time was Senior Program Manager. His job duties as a Senior Program Manager required him to stand or walk for one to two hours per day, and allowed him to sit for the remaining five to six hours per day. (A.R. 621). His job duties required continuous interpersonal relationships and frequent stressful situations. (A.R. 621).

On March 5, 2013, ITT submitted a disability claim to MetLife on behalf of Plaintiff, in which Plaintiff claimed to be disabled as of September 24, 2012 due to depression and hypoglycemia. (A.R. 619, 624-628,620-623, 629-632). Plaintiff submitted further paperwork to MetLife, including a Personal Profile, which identified his treatment providers as Dr. Romeo Isidro, Dr. Sawson Barakat and Dr. Jorge Mestman. (A.R. 589-601). Plaintiff reported in these documents that he had been taking Lexapro, Wellbutrin, and Abilify for depression since July 2003 to the present. (A.R. 592,596). Due to his depression, Plaintiff was unable to deal with stress and unable to concentrate. Plaintiff's

1  hypoglycemia caused him to be dizzy and fatigued, and required him to eat every two
2  hours to control the symptoms.  (A.R. 649-652).

3  In addition to Plaintiff's Personal Profile, MetLife further received an Attending
4  Physician Statement and a Behavioral Health Initial Functional Assessment Form
5  completed by Plaintiff's treating physician, Dr. Isidro.  (A.R. 550-561).   Dr. Isidro
6  diagnosed Plaintiff with depression and hypoglycemia, and began treating him as early as
7  March of 2005.  (A.R. 629).  Dr. Isidro observed and reported that Plaintiff was well
8  groomed, and did not suffer from suicidal ideation, homicidal ideation, delusions or
9  hallucinations.  (A.R. 665).  Dr. Isidro recommended that Plaintiff obtain psychotherapy
10 treatment, but Plaintiff did not follow this recommendation.  (A.R. 665-666).

11 MetLife referred Plaintiff's file to a nurse consultant for review.  The nurse
12 consultant followed up with Plaintiff's endocrinologist, Dr. Barakat.  Dr. Barakat
13 confirmed that Plaintiff's treatment plan to combat hypoglycemia consisted of eating small
14 meals and checking blood sugar every two hours, but that Plaintiff was not being certified
15 as unable to work.  (A.R. 724, 735-736, 787).

16 After a thorough review of Plaintiff's claim, MetLife's claim specialist concluded
17 that the medical information did not support a claim of total disability due to depression or
18 hypoglycemia.  On June 24, 2013, MetLife sent Plaintiff a letter confirming its denial of
19 the claim.  The letter stated that Plaintiff's claim file did not support a severity of
20 functional impairment that would preclude him from performing the essential duties of his
21 own occupation.  (A.R. 481).

22 Plaintiff's administrative appeal was submitted on January 17, 2014.  (A.R. 442-
23 450).  In early February 2014, MetLife referred the claim for review by two Independent
24 Physician Consultants.  The psychiatric file review was conducted by Dr. Marcus
25 Goldman, a board certified psychiatrist, and the endocrinology file review was performed
26 by Dr. Arthur L. Swislocki, a board certified specialist in Internal Medicine.  (A.R. 816-
27 819, 822-823).

28 After review of Plaintiff's file, Dr. Goldman concluded that Plaintiff did not have

3

functional limitations from September 24, 2012 through March 24, 2013, and that Plaintiff's level of treatment and care was not commensurate with severe or functionally impairing psychopathology. (A.R. 328). Dr. Goldman noted that Plaintiff had "been on the same psychotropic medications for years," and that there had been "no aggressive change in the claimant's treatment plan or pharmacotherapy." (A.R. 329). Dr. Goldman opined that the frequency of treatment was "not commensurate with severe or functionally impairing psychopathology," and that there had not been any "treatment in more intense levels of care for the claimant's reported severe and impairing condition." (A.R. 329). Dr. Goldman also found that there was no evidence of typical symptoms to support impairment, such as suicidal or homicidal thinking, thought disorder, anxiety episodes, and volatility or gross disorganization in thinking. (A.R. 329).

Similarly, Dr. Swislocki concluded that Plaintiff's medical information on file did not support functional limitations for the period from September 24, 2012 to March 24, 2013. (A.R. 331). Dr. Swislocki noted a lack of evidence of functional impairment, stating that the "medical documentation, from the endocrine perspective, confirms the diagnosis, but does not clarify the claimant's performance in the workplace or how his dietary treatment is working." (A.R. 332).

On April 4, 2014, MetLife affirmed its decision on appeal to terminate Plaintiff's claim for long-term disability benefits. (A.R. 20-26). MetLife explained that the medical records and evidence in Plaintiff's file did not support a severity of impairment that resulted in functional limitations or restrictions preventing him from performing his job duties as a Senior Program Manager. (A.R. 25).

Consequently, Plaintiff filed suit on May 23, 2014. (Dkt. No. 1). The Court conducted a bench trial on January 20, 2015. (Dkt. No. 29).

## II.   CONCLUSIONS OF LAW

### a.   Standard of Review

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or

4

to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

District courts reviewing denials of benefits under ERISA must apply one of two standards of review, depending on the language of the plan at issue. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). The default standard is de novo review. *Id*. at 115. De novo review means that the court "considers the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932-33 (9th Cir.2009). If, however, the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision to deny benefits and the interpretation of the plan are reviewed for abuse of discretion. *Id*. In order for a plan to alter the standard of review from de novo to abuse of discretion, "the plan must unambiguously provide discretion to the administrator." *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 963 (9th Cir. 2006).

In the instant case, the Plan unambiguously vests MetLife with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. (A.R. 898-899). Plaintiff argues that despite this grant of discretionary authority to MetLife, a de novo standard applies because any grant of discretionary authority contained in the policy was rendered void and unenforceable by California Insurance Code section 10110.6.

California Insurance Code section 10110.6 provides in relevant part:

> (a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

Cal. Ins. Code § 10110.6. The statute defines "renewed" as "continued in force on or after the policy's anniversary date." *Id.* In addition, the statute defines discretionary authority as "a policy

provision that has the effect of conferring discretion on an insurer . . . to determine entitlement to benefits or that, in turn, could lead to a deferential standard of review by any reviewing court." *Id.*

Section 10110.6 became effective on January 1, 2012. *Id.* As the district court noted in *Gonda,* the pertinent issues in determining whether Section 10110.6 applies here are: "(1) whether Plaintiff's claim accrued after the statute's effective date, and, if so, (2) whether the policy was renewed after the statute's effective date, but before Plaintiff's claim accrued." *Gonda v. The Permanente Med. Group, Inc.,* 10 F. Supp. 3d 1091, 1094 (N.D. Cal. 2014).

As to the first question, the Ninth Circuit has held that claims based on a denial of benefits under ERISA accrue at the time benefits are denied. *See Grosz-Salomon v. Paul Revere Life Insurance,* 237 F.3d 1154, 1160-61 (9th Cir. 2001); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1501 (9th Cir. 1984) ("We accept the proposition that an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied."). In the instant case, MetLife denied Plaintiff's appeal in April of 2014, well after Section 10110.6's effective date.

The second relevant question in determining whether the discretionary clause in the policy at issue is void is whether the policy was "offered, issued, delivered, or renewed" after January 1, 2012 — the effective date of Section 10110.6 — but before Plaintiff's claim accrued. *See Stephan v. Unum Life Ins. Co. of Am.,* 697 F.3d 917, 927 (9th Cir.2012). After a thorough review of the record in this case, the Court is satisfied that MetLife's policy renewed after Section 10110.6's effective date, but before Plaintiff's claim accrued, and therefore, the policy's discretionary language is void.

In sum, although the insurance policy at issue includes the type of discretionary language that would warrant an abuse of discretion standard of review under *Firestone,* California Insurance Code section 10110.06 renders this language void. As a result, the Court concludes that the default de novo standard of review applies.

In a de novo review of a plan administrator's decision, "the burden of proof is placed on the claimant" to establish his/her entitlement to benefits. *Muniz v. Amec Constr. Mgmt. Inc*., 623 F.3d 1290, 1294 (9th Cir. 2010). When conducting de novo review of a decision by an ERISA plan administrator, the court must undertake an independent and thorough inspection of the decision.

1 *See Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006). The court then "proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits" based on the evidence in the administrative record. *Abatie*, 458 F.3d at 963.

### b. Analysis and Findings

The instant case is a de novo review of MetLife's denial of benefits. Accordingly, the Court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits. *See Abatie*, 458 F.3d at 963. Felix claims entitlement to long term disability benefits. Therefore, the Court must determine – based on the factual findings detailed above – whether Felix was disabled as defined by his policy and thus entitled to benefits under the relevant contractual provisions.

The evidence in the Administrative Record suggests that Plaintiff has two medical conditions – hypoglycemia and depression. Therefore, in order to meet his burden of proof, Felix must show that during his six-month elimination period and the next 12 month period, he was unable to perform the material duties of his own occupation solely because of illness or injury, or that after the first 12 month period he was unable to work at any gainful occupation for which he is reasonably qualified. (A.R. 879).

Plaintiff argues that his condition requires him to check his blood sugar every two hours, and that because he cannot sense when his blood sugar is low, he is in constant need of another adult to monitor his blood sugar and ensure that he is eating. Plaintiff further argues that his mood and cognitive functioning are dependent on his glycemic stability and that his depression cannot be resolved as long as his hypoglycemia remains active. Defendant argues, on the other hand, that Plaintiff has failed to prove that he suffers from severe impairment resulting in functional limitations or restrictions preventing him from performing his job duties as a Senior Program Manager. In light of these arguments, on de novo review, the Court finds that Plaintiff has failed to establish that he suffers from a disability that prevents him from performing the material duties of his occupation, and that MetLife correctly denied his claimed long term disability benefits.

The determinative issue here is not whether Plaintiff has the conditions of which he complains, but whether he was precluded from working as a result. Here, MetLife referred

Plaintiff's claim for review by two Independent Physician Consultants: Dr. Marcus Goldman and Dr. Arthur Swislocki. Dr. Goldman noted that the "claimant has been on the same psychotropic medications for years and there has been no aggressive change in the claimant's treatment plan or pharmacotherapy." (A.R. 329). Dr. Goldman further opined that the frequency of treatment was "not commensurate with severe or functionally impairing psychopathology," and that there had not been any "treatment in more intense levels of care for the claimant's reported severe and impairing condition." (A.R. 329). According to Dr. Goldman, there was no evidence to support Plaintiff's claims of grossly impaired cognitive functioning, nor was there evidence to support Plaintiff's claim that he was experiencing functional limitations. (A.R. 329). Finally, Dr. Goldman opined that Plaintiff was not receiving appropriate care and treatment for his claimed mental health conditions. Dr. Goldman ultimately concluded that Plaintiff did not have functional limitations from September 24, 2012 through March 24, 2013 and that his level of treatment was not commensurate with severe or functionally impairing psychopathology. (A.R. 328-329).

Moreover, Dr. Swislocki concluded that there was insufficient evidence to support a finding that Plaintiff was functionally limited due to hypoglycemia. Dr. Swislocki noted that there were no records of glucose monitoring, either at home or in the workplace, to confirm the ongoing nature of Plaintiff's impairment. (A.R. 331). Dr. Swislocki emphasized the lack of evidence showing functional impairment, stating that the "medical documentation, from the endocrine perspective, confirms the diagnosis, but does not clarify the claimant's performance in the workplace or how his dietary treatment is working." (A.R. 332).

In addition to Dr. Goldman and Dr. Swislocki's evaluations, this Court finds persuasive the conclusions of Plaintiff's own treating physician, Dr. Barakat. After evaluating of Plaintiff, Dr. Barakat did not certify Plaintiff as unable to work due to depression or hypoglycemia. (A.R. 724).

Finally, this Court finds unpersuasive Plaintiff's argument that he is unable to work due to the fact that he is in need of another person to be continuously present in order to monitor his blood sugar and food intake. There is no evidence to suggest that Plaintiff is in need of another adult who is physically present at all times. Rather, it is reasonable to conclude that Plaintiff could comply with the treatment plan merely by having another adult call every two hours to remind him

to check his sugar levels, or by setting a timer which would remind him to do the same.

In sum, the evidence in the record is insufficient to show that Plaintiff is disabled under the terms of the Plan. Dr. Goldman and Dr. Swislocki's evaluations, coupled with a review of the record in this case, persuades the Court that Felix was not disabled such that he was unable to perform the material duties of his occupation during his claimed disability period. Accordingly, this Court finds MetLife correctly denied benefits and is therefore entitled to judgment in its favor.

**IT IS HEREBY ORDERED** that Defendant's denial of benefits is AFFIRMED and judgment is granted in favor of Defendant.

Dated: June 19, 2015.

_____

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE